No. 18-3107

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

KIMBERLY BILINSKY,
Plaintiff-Appellant,

v.

AMERICAN AIRLINES, INC.,
Defendant-Appellee.

Appeal from the U.S. District Court
for the Northern District of Illinois
Eastern Division
Case No. 1:16-cv-04253
The Honorable Virginia M. Kendall

## APPELLANT'S REPLY BRIEF

KAPLAN SAUNDERS VALENTE &
BENINATI, LLP
Charles A. Valente (#6198718)
Heather Kuhn O'Toole (#6277828)
William D. Nagel (#6288444)
500 North Dearborn Street, 2nd Floor
Chicago, IL 60654
(312) 755-5700

# Table Of Contents

Table Of Contents ........................................................................................................... i

Table of Authorities ...................................................................................................... ii

I.     AA Admits The District Court Weighed Evidence, Which Requires Reversal. .............. 1

II.     The District Court Should Not Have Deferred To AA's Judgment Of The So-Called Essential Functions Of Kimberly's Job While Ignoring Kimberly's Evidence. ............. 2

III.     AA Incorrectly Argues That The District Court Was Required To Weigh AA's Evidence As To The Essential Functions Of Kimberly's Job Against Kimberly's Evidence. ................................................................................................................. 5

IV.     The EEOC Factors Are Relevant To Determining The Essential Functions Of Kimberly's Job. ............................................................................................................ 9

V.     Kimberly Raised A Genuine Issue Of Material Fact Regarding Whether Work From Home Is A Reasonable Accommodation. ..................................................................... 10

    1. Accommodations Involving Work From Home Are Not *Per Se* Unreasonable. .............. 10

    2. Kimberly's Requested Accommodation Is Reasonable. .................................................. 14

    3. AA Falsely Claims That Kimberly Misrepresents The Record. ....................................... 15

VI.     The District Court Expressly Held That The Interactive Process Issue Was "Moot" And Never Ruled On The Issue. ............................................................................................ 19

VII.     Kimberly Did Not Waive Any Arguments On Appeal. ................................................. 23

    Conclusion ...................................................................................................................... 25

Certificate of Compliance with Type-Volume Limit. ................................................... 27

Certificate of Service ...................................................................................................... 28

# Table of Authorities

<u>**Cases**</u>                                                                                                    <u>**Pages**</u>

<u>Abram v. Fulton County Gov't</u>,
    598 Fed. Appx. 672 (11th Cir. 2015)...................................................9, 14

<u>Bailey v. International Brotherhood of Boilermakers, Local 374</u>,
    175 F.3d 526 (7th Cir. 1999) ...................................................................24

<u>Baines v. Walgreen Co.</u>,
    863 F.3d 656 (7th Cir. 2017) .....................................................................1

<u>Basith v. Cook Cty.</u>,
    241 F.3d 932 (7th Cir. 2001) ...................................................................20

<u>Credeur v. Louisiana</u>,
    860 F.3d 785 (5th Cir. 2017)...................................................3-4, 8-9, 14

<u>Denson v Steak 'n Shake, Inc.</u>,
    2018 U.S.App. LEXIS 22805 (8th Cir.) ....................................................4

<u>DePaoli v. Abbott Labs.</u>,
    140 F.3d 668 (7th Cir. 1998) ..................................................................8-9

<u>Gratzl v. Office of the Chief Judges</u>,
    601 F.3d 674 (7th Cir. 2010) .....................................................................9

<u>Marr v. Bank of America, N.A.</u>,
    662 F.3d 963 (7th Cir. 2011) ..................................................................6-7

<u>Miller v. Ill. Dep't of Transp.</u>,
    643 F.3d 190 (7th Cir. 2011) ...................................................................24

<u>Nowak v. St. Rita High School</u>,
    142 F.3d 999 (7th Cir. 1997) ...............................................................8,12

<u>Payne v. Pauley</u>,
    337 F.3d 767 (7th Cir. 2003) .....................................................................5

<u>Rauen v. United States Tobacco Mfg.</u>,
    319 F.3d 891 (7th Cir. 2003) .............................................................12-13

<u>Riel v. Electronic Data Systems, Inc.</u>,
    99 F.3d 678 (5th Cir. 1996) ......................................................7-8,9,14-15

Sapuppo v. Allstate Floridian Ins. Co.,
    739 F.3d 678 (11th Cir. 2014) …………………….……………………22

Stern v. St. Anthony's Health Ctr.
    788 F.3d 276 (7th Cir. 2015)……………………………..…………………20

United States v. IIF Data Solutions,
    650 F.3d 445 (4th Cir. 2011) …………………………….……………22-23

Vande Zande v. State of Wisconsin Dept. of Admin.,
    44 F.3d 538 (7th Cir. 1995) …..……………………………………....9,10-12

Whitlock v. Brown,
    596 F.3d 406 (7th Cir. 2010)……………………………………….……5

**Statutes, Regulations, and Official Guidance**

29 C.F.R. § 1630.2(i) …..……………………………………………………9

29 C.F.R. § 1630.2(n) …..……………………………………………………9

29 C.F.R. § 1630, app. §1630.2(m) …..…………………………………………9

29 C.F.R. § 1630, app. §1630.2(n)…..…………………………………………9

29 C.F.R. § 1630, app. §1630.2(o)…..……………………….…………………9

EEOC Fact Sheet: Work At Home/Telework as a Reasonable Accommodation
(Dec. 20, 2017) [https://www.eeoc.gov/facts/telework.html] …………………….…………..9

In its Response Brief, AA vacillates between an argument that the district court properly weighed the evidence and resolved evidentiary issues in favor of AA, or alternatively, that the district court was free to disregard Kimberly's evidence in resolving the summary judgment motion. Neither argument has merit. Consequently, this Court should reverse and remand this case to the district court.

## I. AA Admits The District Court Weighed Evidence, Which Requires Reversal.

AA contends that the district court properly found that AA's judgment as to the essential functions of Kimberly's job "outweighed any other evidence." [Resp. Br. 16] The district court, however, should not have weighed evidence or resolved disputed questions of fact in deciding a defendant's summary judgment motion.

AA further contends that this Court "should hold that the District Court applied the correct legal standards and made no clearly erroneous findings of fact in granting summary judgment" in AA's favor. [Resp. Br. 7] AA's reliance on the clearly erroneous standard to defend the district court's decision is a tacit admission that the district court erred in granting summary judgment.

Contrary to AA's contention, this Court must review a district court's summary judgment *de novo* and must accept the non-movant's evidence as true and draw all reasonable inferences in her favor. Baines v. Walgreen Co., 863 F.3d 656, 658 (7th Cir. 2017). Summary judgment is proper only if after doing so, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. 863 F.3d at 661.

## II. The District Court Should Not Have Deferred To AA's Judgment Of The So-Called Essential Functions Of Kimberly's Job While Ignoring Kimberly's Evidence.

AA contends that "the only factor the District Court was required to consider was American's judgment on whether presence at DFW was essential." [Resp. Br. 13.] Specifically, AA argues that the district court need not have weighed the evidence, but could simply disregard Kimberly's evidence as to the essential functions of her job because the ADA states "consideration shall be given to the employer's judgment as to what functions of a job are essential." [Resp. Br. 13]

AA made no effort to counter Kimberly's point that if an employer's judgment about what qualifies as an essential function were determinative, then an employer could simply avoid the congressional mandate to make reasonable accommodations by asserting that a particular function is "essential." [App. Br. 18] AA also did not cite a single case using this truncated and draconian analysis of the ADA.

Instead, AA argues that the district court "was not obligated to consider" Kimberly's evidence because it was "based on her subjective view of her job duties." [Resp. Br. 25-26] Curiously, while AA complains about these "subjective job duties" in this Court, in the district court, AA simply admitted that these job duties were "UNDISPUTED". [A688 - A689]

Nonetheless, even if AA had disputed Kimberly's job duties, AA's case law does not support its contention that the district court was free to disregard Kimberly's testimony as to her job duties. AA fails to recognize the significant distinction between an ADA plaintiff's opinions versus the facts and circumstantial

evidence that lead to those opinions. In <u>Credeur v. Louisiana</u>, 860 F.3d 785 (5th Cir. 2017), a case that AA mistakenly relied on, the Fifth Circuit confirmed the distinction between facts and opinions. Significantly, the court confirmed that, with respect to facts, "employees can be good sources of information regarding their day-to-day activities and the prerequisites for success on the job." 860 F.3d at 793. Moreover, the court explained that the determination of whether a function is essential is based upon an analysis of the "circumstantial evidence of an employer's policies and practices pointing to a [conclusion of the] function being essential, or not." 860 F.3d at 794.

With respect to opinions – particularly opinions about whether job functions can be performed from home – the <u>Credeur</u> court was careful to explain that only "unsupported" opinion testimony fails to create a genuine issue of material fact. 860 F.3d at 793. For instance, the <u>Credeur</u> court stated that "the employee's opinion" and "personal judgment" are outside the scope of evidence considered when determining whether a particular job function is essential. 860 F.3d at 794.

The court in <u>Credeur</u> ultimately did not have to weigh or ignore the plaintiff's testimony to determine whether summary judgment was appropriate. Instead, the court affirmed because the facts the employee proffered did not refute facts proffered by her employer demonstrating she could not successfully perform – and had not successfully performed – the essential functions of her job as an attorney working from home.

In Credeur, the plaintiff was a litigation attorney who sought to make permanent what was supposed to be a short-term work from home arrangement. 860 F.3d at 789. Unlike Kimberly, the plaintiff's job performance was subpar. 860 F.3d at 790. Also unlike Kimberly, the plaintiff was unable to keep up with her caseload while working from home, and her employer was forced to reassign some of her work to other employees. 860 F.3d at 790-91. The plaintiff also failed to fulfill administrative tasks required of her and exhibited unprofessional behavior toward her superiors. 860 F.3d at 790-91. Her medical condition later prevented her from attending court hearings, conferences, and depositions. 860 F.3d at 791.

The Credeur court specifically noted that there was no evidence to rebut the fact that the plaintiff's performance suffered and her work had to be reassigned due to her absence from the office. 860 F.3d at 791. In this case, Kimberly successfully worked from home for eight years and kept up with not only her own workload post-merger, but her supervisor admitted she "pick[ed] up the slack" for her co-workers. [A366, §19] In other words, Kimberly proffered more than enough evidence to establish that she, unlike the plaintiff in Credeur, could perform the essential functions of her job while working from home.[1]

---

[1] AA's reliance on Denson v Steak 'n Shake, Inc., 2018 U.S.App. LEXIS 22805 (8th Cir.), is similarly misplaced. In Denson, the Eighth Circuit affirmed a summary judgment for an employer because the employee failed to establish an issue of fact as to his actual abilities to perform an essential function of his job when he offered his belief that he could stand for long periods of time without any additional evidence to substantiate that belief. 2018 U.S. App. LEXIS 33805, at *4.

In a last-ditch effort to characterize the evidence proffered by Kimberly as "subjective" (and therefore supposedly of no evidentiary weight), AA argues that Kimberly needed to offer additional testimony of co-workers to raise her evidence "from the realm of subjectivity, even where AA did not dispute the evidence." [Resp. Br. 28] In other words, AA argues that Kimberly cannot raise a genuine factual dispute through "self-serving" testimony and that her testimony – which AA does not dispute – standing alone is insufficient to defeat summary judgment. AA is flat wrong in this regard.[2]

The record reflects that the factual disputes identified by Kimberly were not created by speculative testimony, but rather were based on her experiences working for AA and the testimony of AA's own witnesses.

### III. AA Incorrectly Argues That The District Court Was Required To Weigh AA's Evidence As To The Essential Functions Of Kimberly's Job Against Kimberly's Evidence.

AA also argues that the presumption that the "employer's understanding of the essential functions of the job is correct … required the district court to weigh American's judgment" against Kimberly's evidence, in contravention of the summary judgment standard. [Resp. Br. 17] AA contends that if courts could not

---

[2] In any event, the district court is not free to ignore "self-serving" testimony that is based on personal knowledge. See Whitlock v. Brown, 596 F.3d 406, 411 (7th Cir. 2010) ("'Self-serving' deposition testimony may satisfy a party's evidentiary burden on summary judgment"); see also Payne v. Pauley, 337 F.3d 767, 772 (7th Cir. 2003) (explaining that the sufficiency of a 'self-serving' statement depends on whether the statement is based on personal knowledge rather than mere speculation).

weigh facts where a legal presumption is at issue, then summary judgment would automatically be precluded "on any analysis that involves presumptions." [Resp. Br. 17] AA's contention is unsupported by the applicable law.

AA has overstated the weight to be given to a presumption. If the party opposing a presumption produces sufficient evidence to permit a reasonable jury to find contrary to the presumed fact, then the presumption is rebutted; this Court has held that the opposing party's burden in this respect is "minimal." <u>Marr v. Bank of America, N.A.</u>, 662 F.3d 963, 967 (7th Cir. 2011).

In <u>Marr</u>, a claim for rescission under the Truth in Lending Act, the issue was whether a consumer received two copies of a written Notice of his Right to Rescind at a real estate closing. The consumer had signed an acknowledgement that he received two copies which created a statutory presumption that he had received both copies. The consumer opposed the creditor's motion for summary judgment with his testimony that his attorney found only one copy of the notice in the folder in which the closing agent placed the closing documents and that the contents of the folder had remained undisturbed since the closing. 662 F.3d at 967. The district court rejected the testimony and entered summary judgment for the creditor.

As this Court recognized, both the district court and the creditor "were understandably worried about the possibility that the presumption of delivery could be rebutted by nothing more than the borrower's say-so," rendering the presumption meaningless. This Court held, however, that the uncorroborated, self-serving

testimony of the non-moving party based on personal knowledge was sufficient to defeat summary judgment. 662 F.3d at 968.

Kimberly produced more than a "scintilla" or "minimal" amount of evidence that she could successfully perform her undisputed job duties from home, in light of her success in this regard for eight years, both before and after the merger.

In fact, Kimberly's opening brief contains an item-by-item table identifying each area where Kimberly produced evidence that directly contradicted the underlying facts that AA claims give rise to the presumed fact that attendance at DFW five days a week was an essential function. [App. Br. 21-25] Her brief also discusses how the facts proffered by AA – and the inferences that could be drawn from those facts – related to each EEOC factor. [App. Br. 30-36] Kimberly's evidence, especially when viewed in the light most favorable to Kimberly (as required when considering a motion for summary judgment) was more than a mere "scintilla" and was therefore sufficient to create a triable issue of fact as to whether her attendance at DFW five days a week was an essential function.

None of the cases cited by AA establish that Kimberly failed to rebut the presumption in this case. AA relies upon <u>Riel v. Electronic Data Systems, Inc</u>., 99 F.3d 678, 682 (5th Cir. 1996), for the premise that the essential functions listed in written job descriptions are entitled to "substantial deference." [Resp. Br. 14] AA's reliance on this case is odd, as the court reversed a summary judgment because a genuine issue of material fact existed as to whether meeting "milestone" deadlines was an essential function of the plaintiff's job. 99 F.3d at 683. There, the employer

claimed that meeting milestone deadlines was an essential function even though it was not listed in the written job description and the plaintiff introduced evidence suggesting that only final deadlines were important to the employer. 99 F.3d at 682-83. This direct conflict about the significance of the deadlines evidenced a disputed material fact requiring a jury trial. 99 F.3d at 683. Ultimately, Riel holds what this Court already knows: where an employee produces evidence that undermines the presumption about essential job functions, the employee has raised sufficient evidence to rebut the "deference" and the presumption itself.

In another case advanced by AA, Nowak v. St. Rita High School, 142 F.3d 999, 1002 (7th Cir. 1997), this Court explained that, to avoid summary judgment in an ADA case, the employee needs to produce more than a "scintilla" of evidence. More recently, this Court has specifically explained that the amount of evidence necessary to rebut a presumption is "minimal." Marr, 662 F.3d at 968.

AA also relies on DePaoli v. Abbott Labs, 140 F.3d 668, 674 (7th Cir. 1998), for the premise that courts "do not otherwise second-guess the employer's judgment in describing the essential requirements for the job." [Resp. Br. 14] Nevertheless, the court there did not engage in any weighing of evidence regarding essential job functions, but instead found that summary judgment was appropriate because it was undisputed that the plaintiff did not propose any reasonable accommodation. 140 F.3d at 675.

AA cites Credeur, 860 F.3d at 792, for its statement that courts "must give greatest weight to the employer's judgment." [Resp. Br. 14] However, as discussed

above, the Credeur court was not faced with an employee who had offered evidence that she could successfully perform her job at home. Instead, the court there specifically noted that there was no evidence to rebut the fact that the plaintiff's performance suffered and her work had to be reassigned due to her being unable to be in the office. 860 F.3d at 791.

## IV. The EEOC Factors Are Relevant To Determining The Essential Functions Of Kimberly's Job.

AA argues that the EEOC regulations are not controlling authority. [Resp. Br. 14-15] Regardless, the EEOC regulations and guidance are relevant to a court's determination as to whether a job function is essential. In fact, AA cites many cases which refer to factors identified in EEOC regulations.[3]

AA also mischaracterizes Kimberly's brief as suggesting that the district court erred by failing to engage in a "scorched earth analysis of essential functions."

---

[3] See, e.g., Credeur v. Louisiana, 860 F.3d 785, 792-93 (5th Cir. 2017) (citing the definition of "essential functions," quoting relevant types of evidence identified at 29 C.F.R. § 1630.2(n), and discussing EEOC guidance regarding teleworking from *EEOC Fact Sheet, Work At Home/Telework as a Reasonable Accommodation*); Vande Zande v. Wisconsin Dept. of Admin., 44 F.3d 538, 543-45 (7th Cir. 1995) (citing EEOC commentary regarding the definition of "reasonable accommodation" at 29 C.F.R. § 1630 app. § 1630.2(o)); DePaoli v. Abbott Labs, 140 F.3d 668, 674 (7th Cir. 1998)(citing EEOC commentary regarding the "essential functions" at 29 C.F.R. app. § 1630.2(n)); Gratzl v. Office of the Chief Judges, 601 F.3d 674, 679 (7th Cir. 2010)(citing the definition of "major life activities" at 29 C.F.R. § 1630.2(i)); Nowak v. St. Rita, 142 F.3d 999, 1002-03 (7th Cir. 1997)(citing the definition of "qualified" at 29 C.F.R. § 1630.2(m)); Riel v. Electronic Data Systems, Inc., 99 F.3d 678, 683-84 (citing the definition of "essential functions" and quoting relevant types of evidence identified at 29 C.F.R. § 1630.2(n)); Abram v. Fulton County, 598 Fed.Appx. 672, 673, 676-77 (citing the definition of "essential functions" and discussing relevant types of evidence identified at 29 C.F.R. § 1630.2(n))

[Resp. Br. 16] Far from this suggestion, Kimberly refers to the EEOC regulations and guidance for the same reason courts do: to explain why and how facts contained in (or absent from) the record are relevant to the conclusion of whether a particular job function is essential.

Here, Kimberly's opening brief set forth (a) each fact AA proffered, (b) each fact Kimberly proffered disputing those facts, (c) areas where facts were missing entirely, and (d) how those facts are relevant to the determination of whether Kimberly's presence at DFW five days a week was an essential function of her job. [App. Br. 20-25, 32-36] This is precisely what Kimberly was required to do to identify disputed issues of material fact and that the district court's entry of summary judgment in favor of AA should be reversed.

## V.  Kimberly Raised A Genuine Issue Of Material Fact Regarding Whether Work From Home Is A Reasonable Accommodation.

Even though Kimberly performed her job at a very high level from home for eight years, AA argues that the record here permits this Court to affirm on the grounds that the accommodation that Kimberly sought – continuing the arrangement – was not a "reasonable accommodation" under the ADA. [Resp. Br. 31-35]

### 1. Accommodations Involving Work From Home Are Not *Per Se* Unreasonable.

First, AA essentially argues that it is *per se* unreasonable for employees who are expected to interact with others to work from home. AA relies exclusively upon a quote from <u>Vande Zande v. State of Wisconsin Dept. of Admin.</u>, 44 F.3d 538, 544-45

(7th Cir. 1995), for this premise.  But, an examination of the broader passage

reveals why that language does not apply here:

> Most jobs in organizations public or private involve teamwork under supervision rather than solitary unsupervised work, and teamwork under supervision generally cannot be performed at home without a substantial reduction in the quality of the employee's performance. **This will no doubt change as communications technology advances, but is the situation today.** Generally, therefore, an employer is not required to accommodate a disability by allowing the disabled worker to work, by himself, without supervision, at home…**No doubt to this as to any generalization about so complex and varied an activity as employment there are exceptions**, but it would take a very extraordinary case for the employee to be able to create a triable issue of the employer's failure to allow the employee to work at home.

44 F.3d at 544-45 (emphasis added).

Initially, <u>Vande Zande</u> does not establish any *per se* rule – the court expressly

states that "there are exceptions." Moreover, the Court foresaw that the bases

underlying its decision **would undoubtedly** be undermined by more advanced

communications technology – the same technology that was readily available to and

used by Kimberly and AA in 2014.

Moreover, setting aside the generalities discussed in the opinion, the factual

situation facing the court in <u>Vande Zande</u> is readily distinguishable. There, the

plaintiff, who was paralyzed from the waist down, performed clerical and secretarial

work. 44 F.3d at 543-4. To accommodate her, the employer, among other things,

modified bathrooms to install a ramp, purchased adjustable furniture, helped pay

for a cot that plaintiff needed for personal care at work, adjusted her schedule to

accommodate medical appointments, and revised construction plans for a newly-constructed locker room. 44 F.3d at 544.

Despite these accommodations, plaintiff complained that the employer did not go far enough during an eight-week period when a complication of her paralysis forced her to stay home. Specifically, plaintiff requested that the employer allow her to work full-time from home and provide her with a desktop computer to do so (even though she had a computer at home). 44 F.3d at 544. The employer refused to provide her with a computer but allowed her to complete whatever work she could from home; but she was required to make up the difference between that work and a full work week by using her sick leave. 44 F.3d at 544. The plaintiff was able to work all but 16.5 hours in the 8-week period and sued over the 16.5 hours of sick time used to make up that difference. 44 F.3d at 544. Ultimately, the Court held that "an accommodation that allows the disabled worker to work at home, at full pay, subject only to a slight loss of sick time… is…, reasonable as a matter of law." 44 F.3d at 545.

As further support for its *per se* argument, AA cites <u>Nowak v. St. Rita High School</u>, 142 F.3d 999, 1003 (7th Cir. 1998), for its statement that "[o]bviously, an employee who does not come to work cannot perform the essential functions of his job." But, <u>Nowak</u> did not involve a request to work from home and, therefore, does not stand for the premise that such a request is *per se* unreasonable.

AA also relies upon <u>Rauen v. United States Tobacco Mfg.</u>, 319 F.3d 891, 896 (7th Cir. 2003), for its explanation that the *per se* rule makes sense because "most

jobs require the kind of teamwork, personal interaction, and supervision that simply cannot be had in a home office situation." It is difficult to see how <u>Rauen</u> is relevant here when for a period of eight years neither Kimberly nor AA had any problem with the "kind of teamwork, personal interaction, and supervision" which resulted from her work from home arrangement.

Furthermore, <u>Rauen</u> is distinguishable on several grounds. First, the plaintiff there rejected the very same accommodation that Kimberly's WFHA provided (*i.e.*, coming to work one day each week and working from home the remainder of the week).[4] 319 F.3d. at 894. Unlike Kimberly, the plaintiff in <u>Rauen</u> requested a home office, that she be allowed to work at home when she was not needed at the office, and that she alone would determine when it was necessary for her to come to work. 319 F.3d. at 896. Second, the plaintiff in <u>Rauen</u> was a software engineer and it was undisputed that her primary duties involved monitoring contractors' work performed at the employer's manufacturing facility and handling spur of the moment problems requiring immediate resolution. 319 F.3d. at 893, 897. Here, Kimberly's role did not involve manufacturing processes and Kimberly disputes whether unexpected problems with communications issues could be addressed by phone, or whether they could be postponed until her next day in the office. Third, the plaintiff in <u>Rauen</u> could actually perform all of the essential functions of her position <u>without</u> any accommodation. 319 F.3d. at 895, 897.

---

[4] Presumably, in <u>Rauen</u>, the one day a week in the office was sufficient to engender "the kind of teamwork, personal interaction, and supervision" required.

**2. Kimberly's Requested Accommodation Is Reasonable.**

Apparently recognizing that a *per se* rule regarding work from home flies in the face of the requirement of a case-by-case, fact-specific inquiry, AA contends that Credeur v. Louisiana, 860 F.3d 785 (5th Cir. 2017), and Abram v. Fulton County, 598 Fed.Appx. 672 (11th Cir. 2015), stand for the premise that an employee cannot be considered a qualified individual where "she refused to work at the employer's workplace." [Resp. Br. 33]

Neither case, however, turned on a determination that the work from home accommodations themselves were unreasonable; instead, those cases held that the employers' time-and-presence requirements were directly connected to some other undisputed job requirement that could not be performed at home. In Credeur, the plaintiff was a litigation attorney who was required to keep up with her caseload (something she was unable to do while working from home) and her medical condition prevented her from attending court hearings, conferences, and depositions. 860 F.3d at 790-1. Similarly, in Abram, the plaintiff was an administrative coordinator who was required to cover the employer's front desk regularly, as she had done almost daily for more than two years. 598 Fed.Appx. at 673, 677-78. Here, there is no evidence that Kimberly's job duties ever changed, and there is no evidence tying any particular duty to Kimberly's daily presence at DFW.

Even if these cases held otherwise, AA again mistakes the burdens of proof allocated to the parties. In Riel v. Electronic Data Sys. Corp., 99 F.3d 678, 683-84

(5th Cir. 1996), a case that AA advances as applicable here, the court held that an employer cannot prevail on summary judgment by demonstrating that an employee's proposed accommodations are unreasonable because the ADA places the burden on an employer to show that a proposed accommodation would impose an undue hardship. See 42 U.S.C. § 12112(b)(5)(A).

In reversing summary judgment in favor of the employer, the Riel court explained that a reasonable accommodation is "*a method of accommodation* that is reasonable in the run of cases, whereas the undue hardship inquiry focuses on the hardships imposed by the plaintiff's preferred accommodation in the context of the particular [employer's] operations." 99 F.3d at 683 (emphasis in original.)

Notably, AA never raised the affirmative defense of "undue hardship" in its Answer [A-21 to A-22], the phrase does not appear anywhere in its summary judgment briefs [A-25 to A-52, A-668 to A-684], nor does it appear in its Response Brief in this Court.

Kimberly has raised a genuine issue of material fact regarding whether working from home four days a week is a reasonable accommodation, specifically, by identifying relevant case law and proffering facts related to each of the factors the EEOC has articulated as being relevant to determining the reasonableness of a work from home accommodation. [App. Br. 36-41]

## 3. AA Falsely Claims That Kimberly Misrepresents The Record.

AA contends that Kimberly misrepresents the matters listed below in her opening brief. An examination of the source material reveals, however, that

Kimberly accurately represented the record below and identified genuine issues of material fact precluding summary judgment:

| The Purported Misrepresentation | Facts in the Record |
|---|---|
| The Phoenix employees held "headquarters positions." [Resp. Br. 22] | 1. Adler testified "even to this day there is a small group of people that are still in Phoenix." [A-456]<br><br>2. The employees in Phoenix were part of the Flight Services Department. [Adler Dep. A-455 to A-456]<br><br>3. Adler testified the Flight Services Department "was being organized" resulting in "the need for presence of **all team members** at headquarters." [A-490] |
| Adler did not consider Kimberly's job duties in concluding presence at DFW was essential for all department workers. [Resp. 22] | • Adler testified that he did not know what Kimberly's job responsibilities were:<br><br>   Q: And again, did you know specifically what Ms. Bilinsky's job responsibilities were in, let's say, March of 2014?<br><br>   A: No.<br><br>   Q: Did you come to learn what her responsibilities were at some point?<br><br>   A: Not specifically.<br><br>   [A-479]<br><br>• Adler's sole understanding was that Kimberly was responsible for writing communications that were sent to flight attendants. [A-479] |

| The Purported Misrepresentation | Facts in the Record |
|---|---|
| Kimberly's supervisors could not identify any task that Kimberly could not perform remotely. [Resp. Br. 23] | • Linda Carlson, Kimberly's supervisor, could not recall any instance of Kimberly stating that there was something she could not do because she was in Chicago:<br><br>Q: Did you ever ask [Kimberly] to help?<br><br>A: Sure. All the time I would ask her to help me, yes.<br><br>Q: Did you ever ask her to help with any of the jobs that needed to be done for the American Leadership conference, or did you just assume that she wouldn't be able to do them?<br><br>A: I don't remember. It was long ago.<br><br>    \*   \*   \*<br><br>Q: Do you recall any instance of Ms. Bilinsky telling you that there was something that she couldn't do because she was in Chicago?<br><br>A: No.<br><br>[A-534]<br><br>• Another of Kimberly's supervisors, Cathy Scheu, testified that Kimberly performed her job at a very high level:<br><br>Q: Did you have an opinion as to whether Ms. Bilinsky was adequately performing this job that she had in 2014 and 2015, despite working from home approximately four days a week? |

| The Purported Misrepresentation | Facts in the Record |
|---|---|
| | A: Yes. She had been performing at a very high level.<br><br>&ast; &ast; &ast;<br><br>Q: Did you have an opinion as to whether American Airlines should have granted Ms. Bilinsky's request for an accommodation to allow her to continue to work from Chicago approximately four days a week?<br><br>A: I will say that initially, I do believe that a reasonable accommodation should be made because Kimberly had performed very well[.]<br><br>[A-516 to A-517] |
| Kimberly's WFHA was granted as an accommodation for her MS because, in 2007, she was given the WFHA was part of AA's "life-work balance" program. Moreover, AA contends that "as the District Court properly found [Kimberly] did not inform her hiring manager that she suffered from MS, and there is no evidence that she ever made a request for accommodation before the merger. (RSA20)" [Resp. Br. 23] | • In Spring 2007, Debbie Carvatta, AA's Regional Managing Director of Flight Service, encouraged Kimberly to apply for the Communications Specialist position. [A-384 to A-385]<br><br>• Carvatta knew that Kimberly could not work in the Dallas area because of her MS. [A-386]<br><br>• Kimberly applied for the position, and Laura Tolar, the hiring manager, offered her the job in April 2007. [A-391]<br><br>• Kimberly told Tolar "I cannot go to Texas. Heat aggravates my medical – a medical condition." [A-393]<br><br>• Tolar responded that: "We can try this. I am open to it. What I know about you, what I've read about you, what I've heard from your |

| The Purported Misrepresentation | Facts in the Record |
|---|---|
|  | previous managers, let's see if this works." [A-393] |
|  | • AA's very citation to the record [A-346 ¶23] specifically notes this dispute. |
|  | • The district court's discussion regarding the hiring manager (Risley) related to the retaliation claim and specifically, whether Risley was aware of the pending request for accommodation in 2015. [RSA 20] |

## VI. The District Court Expressly Held That The Interactive Process Issue Was "Moot" And Never Ruled On The Issue.

AA argues that – despite the district court having specifically found that the issue of whether AA engaged in an interactive process to identify a reasonable accommodation was moot – Kimberly was required to raise this issue on appeal and that the failure to do so is fatal to Kimberly's appeal. [Resp. Br. 11]

In making its argument, AA selectively quotes from the district court's opinion, purposefully omitting two critical sentences which precede the single sentence upon which it bases its argument.  [Resp. Br. 10] Specifically, AA ignores the district court's statements that:

> Bilinsky also argues that American did not adequately engage in the interactive process to provide a reasonable accommodation. *See* (Dkt. No. 71, at 15). However, because she failed to sustain her burden of proving she was a qualified individual the question of whether American offered her a reasonable accommodation **is moot**. *See Basith*, 241 F.3d at 932; *see also Stern*, 788 F.3d 292 ("the employee must show that a reasonable accommodation could be made that would enable her to carry out the essential functions of her job").

[RSA 17 (emphasis added)] The two cases cited by the district court hold that a court need not address the interactive process when a defendant is otherwise entitled to judgment. The court in <u>Basith v. Cook County</u>, 241 F.3d 919, 932 (7th Cir. 2001), noted, "We need not decide whether Basith was denied reasonable accommodation in light of his failure to show a question of fact existed as to whether he was a 'qualified individual with a disability,'" and in <u>Stern v. St. Anthony's Health Ctr.</u>, 788 F.3d 276, 292 (7th Cir. 2015), the court noted that "an employer's failure 'to engage in the required process ... need not be considered if the employee fails to present evidence sufficient to reach the jury on the question of whether she was able to perform the essential functions of her job with an accommodation.'"

Following its conclusion that the interactive process issue was moot, the district court reiterated its conclusion that Kimberly failed to establish that she was a qualified individual and included a single, factually inaccurate, throw-away sentence that AA had worked with Kimberly to find her a new position. Indeed, Kimberly submitted evidence to the district court demonstrating:

- AA decided in November 2014 that it would not grant Kimberly's request for accommodation, per the testimony of her supervisor. [A-366, ¶17]

- Yet AA waited until a March 2015 meeting during which it informed Kimberly that it was denying her request for accommodation and asked that she identify on the spot alternative accommodations, after having

just been told that her twenty-four year career with AA was likely coming
to an end. [A-367, ¶¶21, 24]

- AA's supposed proposed accommodations consisted of identifying a job
  opening for a position for which Kimberly was not qualified or otherwise
  identifying low-level positions.  [RSA 5]

The district court engaged in no factual or legal analysis and did not address a
single argument that Kimberly had raised with respect to the inadequacies in the
supposed interactive process. [A-661 to A-664] In fact, this sentence in which the
district court suggests that AA made efforts to find other employment for Bilinsky is
mere *dicta*.

Apparently recognizing the fact that the district court did not conduct any
analysis on the question of whether an interactive process took place, AA then goes
on to cherry-pick cites to unrelated portions of the district court's opinion in an
attempt to suggest that the court had done more than offer this one-sentence
throwaway at the conclusion of its opinion. In fact, AA claims that "**the District
Court noted** that even though Bilinsky attempted to defeat the interactive
process… American still proactively engaged in the interactive process." [Resp. Br.
10 (citing RSA 4-5,18)]  But, this claim is false. The district court did not make any
such finding.

Finally, while it is unclear whether AA purposefully overlooked the district
court's statement that the question of whether AA engaged in the interactive
process was moot or if it was merely careless in characterizing the court's opinion,

the fact remains that AA has not cited a single case which establishes that

Kimberly was required to address an issue that the district court specifically stated

was moot and on which it thus reached no final decision on the merits.

Instead, AA cites multiple cases to support its contention that an appellant's

failure to challenge the alternate grounds upon which a trial court bases its

judgment requires that judgment to be affirmed. Nevertheless, only two of those

cases involved a ruling made on multiple grounds and, unlike the district court's

opinion here, the bases of those rulings were clearly articulated and undisputed.

In <u>Sapuppo v. Allstate Floridian Ins. Co.</u>, 739 F.3d 678 (11th Cir. 2014), for

example, the trial court dismissed causes of action for unjust enrichment, breach of

contract, breach of fiduciary duty, and breach of the implied covenant of good faith

and fair dealing against an insurer on three grounds: (1) that "the filed rate

doctrine" barred suits challenging the reasonableness of rates filed with a

regulatory agency, (2) that the Florida reinsurance law did not create a private

right of action regarding rates, and (3) that plaintiff policyholders could not

sufficiently plead the causes of action. The Eleventh Circuit affirmed because the

policyholders did not appeal on the third ground. Unlike the district court's order

here (which specifically states the claimed ground is "moot"), the dismissal order in

<u>Sapuppo</u> contained a separate, numbered section analyzing, at length, each of these

grounds. 2013 U.S. Dist. LEXIS 183350, at **4-16 (N.D.Fla. 2013).  Similarly, there

was no dispute that the trial court in <u>United States v. IIF Data Solutions</u>, 650 F.3d.

445, 456 (4th Cir. 2011), excluded certain testimony proffered by the appellant

during the jury trial on two separate, alternative grounds:  (1) that the witnesses

discovery deposition testimony was not supplemented with the additional

information proffered at trial, and (2) that the new testimony was hearsay. The

plaintiff's failure to challenge the hearsay ruling resulted in the appellate court

affirming the evidentiary ruling. 650 F.3d at 445.

Finally, AA never argues that it engaged in an interactive process as an

alternative basis supported by the record on which this Court could affirm, a failure

which waives the argument.

VII. **Kimberly Did Not Waive Any Arguments On Appeal.**

AA argues that Kimberly waived the following arguments by not presenting

them to the district court:

1. AA's evidence is undermined because Carlson could not recall whether she
   asked Kimberly to help with a particular conference event [Resp. Br. 24];

2. The EEOC factors deserve the same level of consideration as the
   employer's judgment [Resp. Br. 14]; and

3. The district court should have considered whether Kimberly's job duties
   could have been distributed among her coworkers [Resp. Br. 24].

As to the first assertion, AA does not dispute that Carlson's inability to recall

asking Kimberly to help with the Leadership Conference was part of the record

before the district court. [A-253] Instead, AA contends that Kimberly is not

permitted to argue that this fact has the effect of disputing AA's other evidence.

This is absurd, as the proper inquiry on summary judgment is whether there is any

material question of fact.

AA's second assertion is simply another way of phrasing Kimberly's argument, previously raised in her response to AA's summary judgment motion, that courts do not simply defer to the employer's say-so when determining whether particular job functions are essential. [A-653 to A-657] Stating that the EEOC factors deserve the same level of consideration is synonymous with stating that no single factor deserves deference. Even if, for the sake of argument, AA's position is more than mere rhetoric, Kimberly has not waived this argument on appeal because the district court recognized and considered Kimberly's argument that the court should not "simply defer" to AA's judgment. [RSA-12] See Bailey v. Int'l Brotherhood of Boilermakers, Local 374, 175 F.3d 526, 529-30 (7th Cir. 1999) (holding an issue ruled upon by the trial court may be "fleshed out and emphasized on appeal").

The same rationale applies to AA's third assertion. In her response to AA's motion for summary judgment, Kimberly discussed at length this Court's decision in Miller v. Ill. Dept. of Transp., 643 F.3d 190 (7th Cir. 2011), and its holding that a jury could find reasonable a requested accommodation by which other members of the team substitute for the plaintiff in certain circumstances. [A-654 to A-655] Kimberly's opening brief before this Court likewise discusses Miller and even uses the same block quote – including the added emphasis – that was set forth in her brief before the district court. [App. Br. 37]

## Conclusion

Despite that Kimberly's job duties were undisputed and evidence that Kimberly performed her job working from home four days per week with one day at DFW for eight years, the district court determined that performing those duties five days per week at DFW became an essential function of her job. In doing so, the district court weighed the evidence and determined that AA's contention that everyday presence at DFW was an essential function of Kimberly's job outweighed Kimberly's evidence or that Kimberly's evidence could be disregarded out of deference to the employer's judgment. If the district court's decision is permitted to stand, then an employer will never be required to accommodate an employee by allowing him to work from home because the employer can always simply decide that business conditions require that the employee work from its premises. This result not only thwarts the purposes and goals of the ADA, but also ignores the reality that communication technologies have advanced to such a degree that the use of telecommuting is now routine. While certainly presence in the workplace is a necessity for some service-oriented positions where the employee deals directly with customers or equipment in-person, a presumption that workplace presence is essential for all other types of work has become irrational.

This Court should reverse the district court's entry of summary judgment and remand this matter for further proceedings.

KIMBERLY BILINSKY

By: /s/Charles A. Valente
Charles A. Valente (#6198718)
Heather Kuhn O'Toole (#6277828)
William D. Nagel (#6288444)
Kaplan Saunders Valente &
    Beninati, LLP
500 North Dearborn Street, 2nd Floor
Chicago, IL 60654
(312) 755-5700

Attorneys for Plaintiff-Appellant
Kimberly Bilinsky

# Certificate of Compliance with Type-Volume Limit

Certificate of Compliance With Type-Volume Limit, Typeface Requirements,
and Type-Style Requirements

The undersigned, counsel of record for the Plaintiff-Appellant, Kimberly Bilinsky, hereby certifies that:

1. This brief conforms to the rules contained in Fed. R. App. P. 32(a)(7)(B)(ii) and Cir. R. 32(c) because this brief contains 5,390 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 12-point font size in the Century Schoolbook style.

Dated: January 23, 2019

KAPLAN SAUNDERS VALENTE &
BENINATI, LLP

/s/ Charles A. Valente
Charles A. Valente (#6198718)
Heather Kuhn O'Toole (#6277828)
500 North Dearborn Street, 2nd Floor
Chicago, IL 60654
(312) 755-5700

Attorneys for the Plaintiff-Appellant,
Kimberly Bilinsky

## Certificate of Service

The undersigned, counsel for the Plaintiff-Appellant, Kimberly Bilinsky, hereby certifies that on January 23, 2019 he electronically filed the *Appellant's Reply Brief* with the Clerk of the Court for the United States Court of Appeal for the Seventh Circuit using the CM/ECF System and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: January 23, 2019

KAPLAN SAUNDERS VALENTE &
BENINATI, LLP

/s/ Charles A. Valente
Charles A. Valente (#6198718)
Heather Kuhn O'Toole (#6277828)
500 North Dearborn Street, 2nd Floor
Chicago, IL 60654
(312) 755-5700

Attorneys for the Plaintiff-Appellant,
Kimberly Bilinsky