No. 18-3107

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

KIMBERLY BILINSKY,
Plaintiff-Appellant,

v.

AMERICAN AIRLINES, INC.,
Defendant-Appellee.

Appeal from the U.S. District Court
for the Northern District of Illinois
Eastern Division
Case No. 1:16-cv-04253
The Honorable Virginia M. Kendall

**Appellant's Petition for Rehearing or
Petition for Rehearing *En Banc***

KAPLAN SAUNDERS VALENTE &
BENINATI, LLP
Charles A. Valente (#6198718)
Heather Kuhn O'Toole (#6277828)
500 North Dearborn Street, 2nd Floor
Chicago, IL 60654
(312) 755-5700

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: __18-3107__

Short Caption: __Kimberly Bilinsky v. American Airlines, Inc.__

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Kimberly Bilinsky

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Kaplan Saunders Valente & Beninati, LLP

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

n/a

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

n/a

---

Attorney's Signature: __/s/ Charles A. Valente__ Date: __12-10-2018__

Attorney's Printed Name: __Charles A. Valente__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes __X__ No ____

Address: __500 N. Dearborn Street, Second Floor__
__Chicago, Illinois 60654__

Phone Number: __312-755-5700__   Fax Number: __312-755-5720__

E-Mail Address: __cvalente@kaplansaunders.com__

rev. 01/15 GA

# TABLE OF CONTENTS

Appearance & Circuit Rule 26.1 Disclosure Statement ................................................. i

Table of Contents ........................................................................................................ ii

Table of Authorities ................................................................................................... iii

Required Statement Under Rule 35(b)(1) ................................................................... 1

Petition ........................................................................................................................ 2

    A.     Introduction ................................................................................................ 2

    B.     Statement Of The Case ............................................................................. 3

    C.     The Majority Erred By Failing To Accord Proper Deference To The EEOC's Regulations Implementing Title I Of The ADA .............................. 4

    D.     This Matter Presents An Issue Of Exceptional Importance Because It Conflicts With A Prior Decision Of The Fourth Circuit ............................. 8

    E.     The Majority Misapprehended The Record Below By Considering Tasks That Were Not Within Bilinsky's Job Duties To Determine That She Could Not Perform The Essential Functions Of Her Job ......................... 10

    F.     Conclusion ............................................................................................... 13

Certificate of Compliance With Type-Volume Limit ................................................. 14

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Pages**

Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.
    467 U.S. 837 (1983) ................................................................................ 1, 5-7

EEOC v. McLeod Health, Inc.
    914 F.3d 876 (4th Cir. 2019) ............................................................ 1, 2-3, 7-10

Richardson v. Chicago Transit Authority
    2019 U.S.App.Lexis 17597 (7th Cir. 2019) ................................................. 1-2, 4-7

Sutton v. United Air Lines, Inc.
    130 F.3d 893 (10th Cir. 1997) ................................................................................ 7

Winsley v. Cook County
    563 F.3d 598 (7th Cir. 2009) ........................................................................... 2, 5-6

## Statues and Regulations

42 U.S.C. § 12101............................................................................................................ 2

42 U.S.C. § 12112(a) ...................................................................................................... 4

42 U.S.C. § 12111(8). ..................................................................................................... 4

42 U.S.C. § 12116........................................................................................................... 5

29 C.F.R. § 1630.2(n)(3)(i)-(vii)................................................................................... 5, 6

29 C.F.R. § 1630, app. §1630.2(n)................................................................................. 5

42 U.S.C. § 12101(a)(7) ................................................................................................. 8

# Required Statement Under Rule 35(b)(1)

A. The majority's opinion in this case conflicts with a recent decision issued by another Seventh Circuit panel in <u>Richardson v. Chicago Transit Authority</u>, ___ F.3d ___, 2019 U.S.App.Lexis 17597 (7th Cir. 2019), in each opinion's respective findings as to the deference owed to regulations issued by the Equal Employment Opportunity Commission. Whereas the <u>Richardson</u> court found that such regulations "are entitled to deference under <u>Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.</u>, unless they are 'arbitrary, capricious, or manifestly contrary to the statute,'" the majority opinion in this case found that EEOC regulations are "solely persuasive authority." [Slip Op. at 6] Due to the conflict, consideration by the full Court is necessary to secure and maintain uniformity of this Court's decisions.

B. This matter also presents a question of exceptional importance as the majority's opinion conflicts with the recent authoritative decision of the United States Court of Appeals for the Fourth Circuit in <u>EEOC v. McLeod Health, Inc</u>., 914 F.3d 876 (4th Cir. 2019). In <u>McLeod</u>, the Fourth Circuit held that under the Americans with Disabilities Act, in the absence of an existing unambiguous job description, a court cannot defer to an employer's determination of what is an essential function of the job. The majority of the panel in this matter held that despite the absence of written job description, a district court could defer to the employer's determination of what is an essential job function.

## Petition

### A. Introduction

The panel affirmed the district court's entry of summary judgment against an employee's failure to accommodate claim under Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), and an analogous state law by a 2-1 vote. The majority found that the employer's unilateral decision that it was essential that the employee perform her job in Dallas, Texas following a merger trumped the employee's evidence that she had successfully performed the same job duties from home for eight years, including for fifteen months after the merger. The majority's decision was based on misapprehensions of law and fact and presents an issue of exceptional importance which contradicts decisions of both this Circuit, as well as the United States Court of Appeals for the Fourth Circuit.

First, the majority decision misapprehends the level of deference that must be accorded to the EEOC's interpretations with respect to Title I of the ADA and mistakenly relies on Winsley v. Cook County, 563 F.3d 598, 603 n.2 (7th Cir. 2009), a decision which has no application here. Moreover, the majority's pronouncement that the EEOC's regulations are at best "persuasive authority" conflicts with the Seventh Circuit's recent opinion in Richardson v. Chicago Transit Authority, ___ F.3d ___, 2019 U.S.App.Lexis 17597 (7th Cir. 2019), which correctly finds that EEOC regulations are entitled to deference under the applicable Supreme Court precedent.

Second, the majority decision conflicts with the recent decision of the United States Court of Appeals for the Fourth Circuit in EEOC v. McLeod Health, Inc., 914

F.3d 876 (4th Cir. 2019), reversing a summary judgment for an employer because, among other reasons, there was a genuine issue of material fact as to the essential functions of the employee's job.

Third, the majority decision misapprehends the record below, as the employer never presented any evidence that any complaints that it had about the employee related to her undisputed job duties.

**B.     Statement Of The Case**

In 2007, Kimberly Bilinsky ("Bilinsky"), a long-time employee of American Airlines, Inc. ("AA"), accepted a new position with AA specializing in corporate communications within the Flight Services Department. AA structured her new position to allow her to work from home to accommodate her disability. After she successfully performed that job for eight years, AA required that Kimberly physically work from its Dallas-Fort Worth headquarters five days a week based on a vague need to collaborate, and, as a result, denied Kimberly's renewed request to accommodate her disability by allowing her to continue to work remotely four days per week. The individual who made this decision had no knowledge of Bilinsky's specific job duties and AA had no written job description for Bilinsky's position. Bilinsky sought relief against AA under both the Americans with Disabilities Act and the Illinois Human Rights Act.

The district court entered summary judgment for AA on the issue of whether Bilinsky could perform a claimed essential function of her job, *i.e.*, working from the Dallas-Fort Worth headquarters five days a week. Bilinsky appealed and a divided

3

majority of this Court affirmed the district court's decision. Bilinsky now seeks rehearing or rehearing *en banc*.

### C. The Majority Erred By Failing To Accord Proper Deference To The EEOC's Regulations Implementing Title I Of The ADA.

In conflict with the Seventh Circuit's recent opinion in Richardson v. Chicago Transit Authority, ___ F.3d ___, 2019 U.S.App.Lexis 17597 (7th Cir. 2019), the majority wrongly concluded that the EEOC regulations interpreting Title I of the ADA are not "entitled to any special deference by the courts." [Slip Op. at 6] And, in reliance on this misapprehension of the deference owed to the EEOC's regulations, the majority erroneously gave undue weight to AA's claims regarding the essential functions of Bilinsky's job and improperly minimized Bilinsky's evidence regarding the true scope of her job duties.

Title I of the ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to … discharge of employees … and the terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Title I further states that to be a qualified individual is someone "who, with or without reasonable accommodation, can perform the 'essential functions' of the employment position that such individual holds or desires." 42 U.S.C. §12111(8). Moreover, for purposes of determining whether an individual is a "qualified individual," Title I dictates that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. §12111(8).

In addition to the foregoing, the EEOC has promulgated regulations regarding the definition of "essential function," identifying seven factors to be considered in determining whether a job duty is in fact an essential function. 29 C.F.R. § 1630.2(n)(3)(i)-(vii). Bilinsky's opening brief identified each of these factors and extensively discussed additional considerations identified by the EEOC that are appropriately considered in determining whether a particular function is essential. 29 C.F.R. § 1630, app. §1630.2(n). The EEOC regulations further explain:

> Whether a particular function is essential is a factual determination that must be made on a case by case basis. In determining whether or not a particular function is essential, **all relevant evidence should be considered**. Part 1630 lists various types of evidence, such as an established job description, that should be considered in determining whether a particular function is essential. Since the list is not exhaustive, other relevant evidence may also be presented. **Greater weight will not be granted to the types of evidence included on the list than to the types of evidence not listed.**

29 C.F.R. § 1630, app. §1630.2(n) (emphasis added). Based on these factors, Bilinsky asserted that she was a qualified individual and able to perform the essential functions of the job that she held for eight years.

As established in the Supreme Court's decision in <u>Chevron U.S.A., Inc. v. NRDC, Inc.</u>, 467 U.S. 837, 844 (1983), "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." In this case, Title I of the ADA explicitly instructs that the "[EEOC] shall issue regulations … to carry out this subchapter [Title I]." 42 U.S.C. § 12116. Those regulations include the regulations setting forth the

5

appropriate considerations in determining the essential functions of a job. See 29 C.F.R. § 1630.2(n)(3)(i)-(vii).

Despite the admonition in Chevron that regulations promulgated by federal agencies pursuant to congressional authority are entitled to deference, the majority opinion disregarded the factors set forth by the EEOC in determining the essential functions of Bilinsky's position, and instead ceded such determination to AA's testimonial evidence regarding Bilinsky's supposed job duties, as no written job description existed. In the process, the majority ignored Bilinsky's evidence as to those factors deemed significant by the EEOC in determining the essential functions of a job, in effect giving the employer sole discretion to determine what is "essential" regardless of the realities of the job.

In declining to afford the EEOC regulations any consideration, the majority relied on Winsley v. Cook County, 563 F.3d 598, 603 n.2 (7th Cir. 2009): "The EEOC issues regulations interpreting the ADA, … its 'interpretation is not necessarily entitled to any special deference by the courts because Congress has not given that agency the authority to interpret the ADA.'" [Slip Op. at 6] The majority's reliance on Winsley is misplaced, however, as the court in that case considered an EEOC regulation which interpreted the term "major life activities" as that phrase was used in Section 12102(2) of the ADA, which is not a part of Title I. In other words, while Congress vested the EEOC with authority to issue regulations on Title I, it did not vest the EEOC with authority to interpret the defined terms set forth in other sections of the ADA.

Moreover, the majority's admonition that EEOC regulations are "not necessarily entitled to any special deference by the courts" and should instead be regarded "solely as persuasive authority" squarely conflicts with another panel's holding in Richardson that "EEOC regulations interpreting the ADA are entitled to deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., unless they are 'arbitrary, capricious, or manifestly contrary to the statute.'" Richardson, ___ F.3d at ___; 2019 U.S.App.Lexis 17597, at *10-11 (citing Chevron, 467 U.S. at 844; Sutton v. United Air Lines, Inc., 130 F.3d 893, 899 n.3 (10th Cir. 1997)). Although the majority made no finding that the EEOC's admonition on the seven factors to consider in determining whether a job function is essential were arbitrary, capricious, or manifestly contrary to the provisions of Title I of the ADA, it nonetheless disregarded those factors in reaching its decision, emphasizing AA's judgment above all else.

The majority's decision to disregard the EEOC's regulation noting that the employer's judgment is just one of the several factors a court should consider ultimately led to its finding that Bilinsky failed to demonstrate the existence of a material question of fact. In other words, rather than considering the several factors identified by the EEOC, the majority found only one factor to be relevant – whether AA considered physical presence at its headquarters an essential function of Bilinsky's job. Consequently, AA prevailed because the majority improperly concluded that none of the factual issues raised by Bilinsky, *i.e.,* the factual issues

7

that the EEOC has deemed relevant pursuant to its regulations, had any bearing on the outcome of the case.

Congress adopted the ADA with the express purpose of assuring "equality of opportunity, full participation, independent living, and economic self-sufficiency" for individuals with disabilities. 42 U.S.C. § 12101(a)(7). This was seen not merely as upholding the civil rights of individuals with disabilities, such as dignity, financial independence, and self-sufficiency, but also as a benefit to both society and the economy at large. Congress has mandated that these civil rights outweigh an employer's convenience and efficiency. As the EEOC has recognized in interpreting Title I, employers must make reasonable sacrifices to accommodate the needs of their employees with disabilities. As such, the determination of what is or is not an essential function of an individual's job is not simply blind deference to the word of the employer.

Because the majority improperly disregarded the EEOC's regulations, and in turn, disregarded the questions of fact that arose from consideration of these regulations, Bilinsky should be granted a rehearing.

### D. This Matter Presents An Issue Of Exceptional Importance Because It Conflicts With A Prior Decision Of The Fourth Circuit.

In <u>EEOC v. McLeod Health, Inc</u>., 914 F.3d 876, 882 (4th Cir. 2019), the Fourth Circuit reversed summary judgment in favor of an employer, finding that there was a genuine material issue of fact as to whether it was an essential function of the employee's job to travel to different job sites. As noted by the dissent, the

plaintiff in McLeod, like Bilinsky, wrote and edited internal communications. 914 F.3d at 877. Unlike Bilinsky, the employee in McLeod had historically traveled to the employer's different locations to conduct in-person interviews and attend company events, though there was conflicting evidence as to whether this travel was necessary or simply a matter of preference. 914 F.3d at 877, 881. While the employee in McLeod had a written job description, that description made no mention of the need for travel or in-person interviews. 914 F.3d at 881. The EEOC submitted evidence that the employee was able to conduct the interviews needed and collect other forms of content by phone. 914 F.3d at 882. The district court nonetheless granted summary judgment to the employer finding that the employee could not meet an essential function of her job: the need to travel.

In reversing summary judgment, the Fourth Circuit correctly observed that the court's "job at this stage [summary judgment] is not to decide which party's evidence is stronger or more persuasive. It is only to determine whether the [plaintiff] has produced more than 'a mere scintilla of evidence' in support of its position that navigating to and within [the employer's] campuses was not an essential function of [the employee's] job." 914 F.3d at 882. McLeod stands for the proposition that, in the absence of an existing unambiguous job description, a court cannot defer to an employer's determination of what is an essential function of the job. The majority's decision here deferring to AA's determination of what is an essential function of Bilinsky's job in the absence of a written job description conflicts with McLeod's holding.

9

Moreover, the conflict between the majority's decision and the Fourth Circuit in McLeod is no trifling matter. This conflict and lack of uniformity in interpreting federal law is a matter of exceptional importance because it (1) significantly impacts the results in cases without clear job descriptions; and (2) causes national employers to refrain from adopting clear job descriptions which may be used against them.

E.    **The Majority Misapprehended The Record Below By Considering Tasks That Were Not Within Bilinsky's Job Duties To Determine That She Could Not Perform The Essential Functions Of Her Job.**

The majority opinion acknowledged that Bilinsky's evidence that she successfully performed her job for fifteen months post-merger would be probative evidence that she could perform the essential functions of her job. The majority, however, disregarded this evidence because the majority thought that the testimony did not support that Bilinsky performed her job duties successfully:

> "[Bilinsky] just wasn't able to do things that you needed to do to support an event. You can't drive to the hotel that's in Dallas if you're in Chicago. You can't go check out [AV] equipment in Chicago. You can't meet with subject matter experts to directly, you know, get photographs." "[Other employees] would be frustrated they didn't have another set of hands to divide and conquer work that had to be done there. ... And I[,] like the team[,] felt spread very thin at times." The testimony establishes Bilinsky's willingness to perform, but it does not create a genuine dispute over her ability to fill the gap.

[Slip Op. at 11-12]

The majority's mistake in relying on this testimony is that none of the complaints specified had anything to do with Bilinsky's job duties. There was no

10

written job description for Bilinsky's job and the comprehensive list of Bilinsky's job duties which she presented to the district court in her response to the summary judgment motion, a list that AA did not dispute, did not include any of these items. [A-363 ¶7; A-688 ¶7] Stated differently, not only was there no written job description identifying the need for physical presence in AA's Dallas office, Bilinsky and AA agreed as to Bilinsky's job duties, none of which required a Dallas presence.

In fact, the testimony relied upon by the majority to support its finding that it was undisputed that Bilinsky's presence in Dallas was required five days a week stemmed from a single event organized by the Flight Service Department—the February 2015 American Airlines Leadership Conference. [A-251]

> Bilinsky argues that a single event is not enough to establish a pattern, but she offered no countervailing evidence to show that the conference was an isolated event rather than one example of a regular occurrence.

[Slip Op. at 13] The burden here, however, was on AA to demonstrate that there was no genuine issue of material fact that Bilinsky could not perform an essential function of her job. And, the majority mistakenly relied on evidence as to a single event that was not in any written job description (there was none) and was not in the list of Bilinsky's job duties. The majority then apparently assumes that somehow this single event became an essential function of Bilinsky's job because Bilinsky did not present evidence that it was an isolated event. Certainly, Bilinsky never conceded that assisting with the leadership conference was part of her job. Moreover, the evidence before the district court also supports the reasonable inference that AA also did not believe that assisting with the leadership conference

11

was a part of Bilinsky's job, as her supervisors never even requested that Bilinsky assist with the conference. [A-253] In any event, the panel here got it backwards, if these events became an essential function of Bilinsky's job, AA should have offered evidence to demonstrate as much. It did not.

Moreover, the majority mischaracterizes the evidence in finding that the "department expanded its workload, transitioned from primarily producing written communications to putting on live events and performing crisis management functions." [Slip Op. at 9-10] In fact, the evidence submitted by Bilinsky demonstrated that her undisputed job duties included research and writing tasks that were largely performed by phone and through research. AA never disputed that these were Bilinsky's job duties and in fact, admitted that these were Bilinsky's job duties. [A-363, ¶ 7; A-688, ¶ 7] AA identified a single "live event" which Bilinsky was never asked to participate in and which is not listed among her job duties, as agreed to by AA. [See A-363, ¶ 7; A-688, ¶ 7] Finally, the evidence showed that the decision to disallow Bilinsky's request for accommodation was made by an individual who did not know Bilinsky's particular job duties, made no effort to learn those job duties, and believed that all Bilinsky did was send emails to flight attendants. [A-365]

Finally, the panel concluded that the post-merger "process of synchronizing … former policies and procedures would necessarily lead to some evolution in individual responsibilities, and an employee cannot create a dispute of fact merely by pointing to her ability to perform in the job before the merger occurred (or as the

12

changes evolved)." [Slip Op. at 14] But neither the district court nor the panel ever required AA to put forward any evidence that Bilinsky's actual job duties changed. As a result, because Bilinsky was at all times performing the same job duties, her ability to perform those duties either pre- or post-merger was probative of whether she could perform the essential functions of her job.

### F. Conclusion

For the foregoing reasons this panel should grant rehearing in this matter. Alternatively, this Court should grant an *en banc* review here.

KIMBERLY BILINSKY

By: /s/ Charles A. Valente
Charles A. Valente (#6198718)
Heather Kuhn O'Toole (#6277828)
Kaplan Saunders Valente &
    Beninati, LLP
500 North Dearborn Street, 2nd Floor
Chicago, IL 60654
(312) 755-5700

Attorneys for Plaintiff-Appellant
Kimberly Bilinsky

13

## Certificate of Compliance with Type-Volume Limit

The undersigned, counsel of record for the Plaintiff-Appellant, Kimberly Bilinsky, hereby certifies that:

1. This petition conforms to the rules contained in Fed. R. App. P. 32(a)(7)(B)(ii) and Cir. R. 32(c) because this brief contains 3,302 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2. This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 12-point font size in the Century Schoolbook style.

Dated: July 24, 2019

KAPLAN SAUNDERS VALENTE & BENINATI, LLP

/s/ Charles A. Valente
Charles A. Valente (#6198718)
Heather Kuhn O'Toole (#6277828)
500 North Dearborn Street, 2nd Floor
Chicago, IL 60654
(312) 755-5700

Attorneys for Plaintiff-Appellant
Kimberly Bilinsky

## Certificate of Service

The undersigned, counsel for the Plaintiff-Appellant, Kimberly Bilinsky, hereby certifies that on July 24, 2019 he electronically filed the *Appellant's Petition for rehearing or Petition for Rehearing En Banc* with the Clerk of the Court for the United States Court of Appeal for the Seventh Circuit using the CM/ECF System and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: July 24, 2019

                                                   KAPLAN SAUNDERS VALENTE &
                                                   BENINATI, LLP

                                                 /s/ Charles A. Valente
                                                 Charles A. Valente (#6198718)
                                                 Heather Kuhn O'Toole (#6277828)
                                                 500 North Dearborn Street, 2nd Floor
                                                 Chicago, IL 60654
                                                 (312) 755-5700

                                                 Attorneys for Plaintiff-Appellant
                                                 Kimberly Bilinsky